IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GLOBAL POWER EQUIPMENT<br>GROUP INC., *et al.*,<br>        Debtors. | Chapter 11<br>Bankruptcy Case No. 06-11045 (BLS)<br>Jointly Administered |
| MITSUBISHI POWER SYSTEMS<br>AMERICAS, INC.,<br>        Appellant,<br><br>v.<br><br>DELTAK, LLC,<br>        Appellee. | Civil Action No. 06-687 (KAJ)<br><br>Appeal from the United States Bankruptcy<br>Court for the District of Delaware<br>(The Hon. Brendan L. Shannon) |

**REPLY BRIEF IN SUPPORT OF MOTION FOR EXPEDITED APPEAL
BY APPELLANT MITSUBISHI POWER SYSTEMS AMERICAS, INC.**

Through counsel, Appellant Mitsubishi Power Systems Americas, Inc. respectfully submits this reply brief in support of its emergency motion (filed Nov. 8, 2006) seeking expedited scheduling for this appeal.

Debtor-Appellee Deltak LLC's brief opposing expedition of this appeal makes no mention of the facts on the ground that require decision of this appeal by November 22, 2006, if the Court is to grant meaningful relief before entirely avoidable prospective harms are suffered. Instead, Deltak faults Mitsubishi on procedural technicalities, insisting on performance of every formality in the hope of forestalling appellate adjudication until it is too late to be meaningful. This Court should look past the procedural rules to the substance of the facts requiring expedited

adjudication, and should order an appeal schedule that will allow the Court to decide the parties' respective rights while those rights still matter.

**Facts Justifying Expedition**

The facts justifying an expedited appeal schedule (and, *a fortiori,* expedited decision of this scheduling motion) are these:

This appeal concerns the disposition of "Catalysts" that are necessary integral components of a new power plant Mitsubishi is installing in Oregon. Mitsubishi's contract with the plant owner requires that the Catalysts arrive on site by December 15, 2006. If timely delivery is not made, the entire power plant installation will be thrown off schedule. In addition, massive and escalating liquidated damages will begin to accrue, not only against Mitsubishi, but also against Deltak's bankruptcy estate.

The Catalysts have been completed and are ready for delivery. Deltak, which as the intermediate contractor holds the rights to the Catalysts, is refusing to deliver them unless Mitsubishi accedes to unilateral and unjustified demands for payment far above the contract price. Deltak cannot pay for the Catalysts (lacking cash to do so), and even if it could, the custom-designed Catalysts have no use or value to Deltak, any third-party purchaser, or indeed anyone but Mitsubishi. The only thing Deltak is able to do with the Catalysts is withhold them, demanding ransom for them.

Deltak's contract with Mitsubishi contains industry-standard continuity provisions that require Deltak, in the event of default and upon demand, to assign its contracts to the party now liable to perform on the job, Mitsubishi. Such assignment and takeover provisions contribute to stability on complex construction projects by ensuring that the default of one among dozens or hundreds of subcontractors does not hold up the orderly completion of the job, which requires

adherence to a complex interlocking schedule. Here, Deltak's rejection of its contract with Mitsubishi under Section 365 amounts to a breach, which triggers Deltak's obligation to assign its subcontracts as contemplated by the remedial continuity provisions. Deltak is refusing to do so, even though it has no other value or use for the Catalysts it is withholding, solely that it can hold up Mitsubishi for additional payments, enforced by the threat of project delay and attendant liquidated damages, which are a very real threat to Mitsubishi, though an illusory one to Deltak (due to the likely discharge of any damages against it in bankruptcy).

The sole question in this appeal is whether Mitsubishi may obtain specific performance of Deltak's remedial covenant to assign its subcontracts and warranties in the event of breach. The Bankruptcy Court ruled "no specific performance," as a matter of law. Mitsubishi respectfully submits this was legal error.[1] The answer to the question is meaningful, however, only while Mitsubishi may still practically assert its right to assignment. Once the project is delayed and liquidated damages begin to accrue, Mitsubishi will likely be forced by necessity to surrender its contract right and accede to Deltak's unilateral demand for ransom payment.

It will take three weeks to ship the completed Catalysts from their current locations in New York and Alabama to the job site in Oregon. Thus, to meet the contract deadline of December 15, 2006, shipment must begin by November 24 (the day after Thanksgiving). Mitsubishi must know by November 22, the day before Thanksgiving, whether it may take assignment of the Catalysts as the rejected (breached) but still enforceable contract provides, or whether it must choose between ordering new Catalysts or capitulating to Deltak's unjustified demands. Thus, Mitsubishi has respectfully and diligently sought from this Court an appeal

---

[1] In addition to the disposition of the Catalyst subcontracts, decision of this legal issue on appeal will also affect the assignment to Mitsubishi of the warranties on all of Deltak's subcontracts, as required under the Mitsubishi-Deltak contract.

schedule that will allow for decision by November 22, 2006. Mitsubishi has already served and filed its opening brief on Monday, November 13, and asks for Deltak's response brief by November 17, a reply by November 20, and a hearing on either November 21 or 22.

### Analysis: Reply to Deltak's Opposition

Opposing such straightforward procedural relief, Deltak makes no mention of the underlying facts concerning the December 15 contract deadline or the time necessary to deliver the Catalyst's. Instead, Deltak insists on observance of all procedural formalities, and further argues that the "irreparable harm" test must be applied with the same vigor to a request for <u>scheduling</u> relief (or, to be accurate, to MPS' request for expedited scheduling of its <u>request</u> for scheduling relief).

Nothing Deltak has to say about procedural formalities obscures the fact Deltak seeks to use as leverage for its own interests—that an entire power plant installation will be held up on December 15 unless Deltak releases the critical components that it holds but has no other use for. Deltak wants to foreclose the possibility of a judicial order that it perform its obligation to assign the Catalysts, so that the only way for the Catalysts to reach the job site on time is for MPS to capitulate to Deltak's unilateral demands. Lastly, Deltak does not mention that the delivery may be accomplished, and all harm to all parties averted, <u>at no cost to Deltak</u>, if Deltak simply does what it is obligated to do in the event of breach (e.g., rejector) – assign its subcontracts to the prime contract, MPS.

The irreparable harm MPS faces, for purposes of this <u>scheduling</u> motion, is the inability to receive a timely adjudication of its contract rights before massive liquidated damages begin to kick in. That result—procedurally procedurally foreclosing timely appellate relief—is precisely what Deltak is counting on to give it leverage to enforce its unilateral financial awards. The

Court should decline to allow its motions procedure rules to become tools of such gamesmanship. Instead, it should set a briefing schedule that will allow timely appellate adjudication of the parties' rights by November 22.

Although they are procedural technicalities, Mitsubishi responds to the points in Deltak's schedule opposition:

1. Marc Philips, Mitsubishi's local counsel, complied with the procedural requirements of this Court's Local Rule 7.1.1. On November 8, 2006, Mr. Philips telephoned Debtors' counsel, White & Case. He first asked to speak to John Cunningham, Esq., and was told that Mr. Cunningham was out of the country. Mr. Philips then asked to be transferred to Matthew Brown, Esq., another White & Case attorney working on this bankruptcy case. Mr. Philips left a message for Mr. Brown informing him of Mitsubishi's intention to file the Emergency Motion. Later that day Mr. Brown called back and informed Mr. Philips that he expected that the Debtors would oppose the relief sought in the Emergency Motion. In the meantime, in light of the urgency of obtaining expedited relief (for the before-mentioned underlying reasons), Mr. Philips filed Mitsubishi's emergency motion with the Court, noting that attempt at contact had been made.

In any event, we now know Deltak's position on the motion—they have submitted an opposition. The pre-motion contact point is moot.

2. Although this Court does have mandatory mediation procedures, Deltak again seeks to interpose them for purposes of delay, to foreclose the possibility of appellate relief while such relief is still meaningful. Deltak points out, however, that mediation is in fact scheduled in the Bankruptcy Court for November 17. That mediation has the same goal and serves the same

purpose as mandatory mediation in this Court. It should be considered to be substantial compliance with this Court's mediation requirement.

3. It is possible, however, that mediation will fail to produce settlement. If this Court waits until after the November 17 mediation to set a briefing schedule, Deltak will have gotten what it wants—it will be too late to receive timely judicial relief without delaying the job and incurring at least some liquidation damages, at the rate of $25,000 per day. Again, it is precisely this fact that Deltak seeks to exploit as leverage (remembering, of course, that Deltak could comply with its contractual obligation to assign the subcontracts <u>at no cost whatsoever to itself</u>).

4. This Court should not wait to set a schedule, and thereby allow the dispute to become substantively, if not formally, moot. Deltak is a sophisticated party represented by sophisticated counsel. They are capable, as is MPS, of pursuing mediation and appellate relief on parallel tracks, in order to assure briefing is completed in time to decide and grant meaningful relief.

5. Deltak also points to its November 15 motion to reject the Cormetech contract for the $NO_x$ catalysts, which if granted, will obviate the dispute as to those catalysts.[2] But the BASF subcontract for the CO catalyst, which Deltak does not mention, remains unresolved. The BASF subcontract is just as effective a cudgel for Deltak—without the CO catalyst, the Heat Recovery Steam Generator will not operate, and the power plant installation will be delayed. The parties still need decision of their obligations by November 22, or Deltak wins—by being able to exploit

---

[2] Notably, Deltak's decision to reject that contract resulted only from a litigated motion to compel Deltak to make that decision by November 15. This shows that adjudication of the parties' rights is just as important as mediation in driving a timely and rational resolution of this dispute.

its possession of unique assets to hold up the project and threaten mutually destructive and utterly avoidable damages that only MPS, not Deltak, will have to pay in real dollars.

6.    Finally, Deltak argues that MPS has not shown "irreparable harm" necessary to obtain relief. But the current motion is a <u>scheduling</u> motion – not a motion seeking emergency injunctive relief. To require a strict showing of harm that cannot be compensated in money before expediting <u>any</u> appeal, no matter the immanency or the size of the harm at issue, would needlessly place form over substance, and would enhance the power of debtors to engage in exploitive behavior like Deltak's – threatening massive but avoidable <u>prospective</u> harm, that only others will have to pay, in order to leverage unilateral financial demands, while free from judicial review or relief. The law favors decision of disputes on their merits where possible. Here, that can only happen if the appeal is heard or an expedited schedule. The Court should look past Deltak's insistence on every procedural hoop, and should order a schedule that will allow the Court to decide before massive <u>prospective</u> harms are incurred.

Dated: November 16, 2006                    Respectfully submitted,

*[signature]*

Marc J. Phillips (No. 4445)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19801
(302) 658-9141

Filiberto Agusti
Joshua R. Taylor
Steptoe & Johnson LLP
1330 Connecticut Ave, NW
Washington, D.C. 20036
(202) 429-3000 (telephone)
(202) 429-3902 (facsimile)

*Counsel for Appellant*
*Mitsubishi Power Systems Americas, Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 16th day of November, 2006, I caused a true and correct copy of the **Reply Brief In Support Of Motion For Expedited Appeal By Appellant Mitsubishi Power Systems Americas, Inc.** to be served in the manner indicated upon the following counsel:

**BY HAND DELIVERY**

Jeffrey M. Schlerf, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

Adam G. Landis, Esq.
Kerri K. Mumford, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, DE  19801

Stuart M. Brown, Esq.
William E. Chipman, Jr., Esq.
Edwards Angell Palmer & Dodge LLP
919 North Market Street
Wilmington, DE  19801

Joseph McMahon, Esq.
Office of the United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE  19801

Christopher A. Ward, Esquire
Klehr, Harrison, Harvey, Branzburg
  & Ellers LLP
919 N. Market Street, Suite 1000
Wilmington, DE  19801

**BY TELEFAX AND U.S. MAIL**

Matthew C. Brown, Esq.
White & Case LLP
Wachovia Financial Center
200 South Biscayne Boulevard, 49th Floor
Miami, FL  33131

Howard L. Siegel, Esq.
Brown Rudnick Berlack Israels LLP
City Place I
185 Asylum Street
Hartford, CT 06103

Steven D. Pohl, Esq.
John C. Elstad, Esq.
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111

Thomas S. Kiriakos, Esq.
Matthew Wargin, Esq.
Mayer, Brown, Rowe & Maw LLP
71 South Wacker
Chicago, IL  60606-4637

Edward S. Weisfelner, Esq.
Brown Rudnick Berlack Israels LLP
7 Times Square
New York, NY 10036

Jeffrey S. Sabin, Esq.
David M. Hillman, Esq.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

Marc J. Phillips (No. 4445)

#500372v1



**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

Marc J. Phillips
TEL (302) 884-6581
FAX (302) 658-0380
EMAIL mphillips@cblh.com
REPLY TO Wilmington Office

1990 M Street, NW, Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

WEB www.cblh.com

November 16, 2006

**BY HAND DELIVERY**
The Honorable Kent A. Jordan
United States District Judge
  for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Room 6325, Lockbox 10
Wilmington, DE  19801

Re:   *In re Global Power Equipment Group, Inc., et al.,* (*In re Deltak LLP*), *Debtors,* Bankr. No. 06-11045 (BLS);

*Mitsubishi Power Systems Americas, Inc. v. Deltak LLC,*
Civ. Action No. 06-687 (KAJ)

Appeal from the U.S. Bankruptcy Court for the District of Delaware

Dear Judge Jordan:

Enclosed for your review please find a courtesy copy of the *Reply Brief In Support Of Motion For Expedited Appeal By Appellant Mitsubishi Power Systems Americas, Inc.* filed this afternoon.

Respectfully yours,

Marc J. Phillips

The Honorable Kent A. Jordan
November 16, 2006
Page 2

cc:  Clerk of the Court (via hand delivery)
     Jeffrey M. Schlerf, Esq. (via e-mail)
     Eric M. Sutty, Esq. (via e-mail)
     Adam G. Landis, Esq. (via e-mail)
     Kerri K. Mumford, Esq. (via e-mail)
     Stuart M. Brown, Esq. (via e-mail)
     William E. Chipman, Jr., Esq. (via e-mail)
     Joseph McMahon, Esq. (via e-mail)
     Christopher A. Ward, Esq. (via e-mail)
     John K. Cunningham, Esq. (via e-mail)
     Frank L. Eaton, Esq. (via e-mail)
     Howard L. Siegel, Esq. (via e-mail)
     Steven D. Pohl, Esq. (via e-mail)
     John C. Elstad, Esq. (via e-mail)
     Edward S. Weisfelner, Esq. (via e-mail)
     Jeffrey S. Sabin, Esq. (via e-mail)
     Thomas S. Kiriakos, Esq. (via e-mail)

#500377v1